**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Suzanne Meade**, on behalf of<br>herself and all others similarly situated,<br>2450 Warm Springs Drive<br>Hilliard, Ohio 43026 | Case No.: 2:17-cv-892 |
| **Brenda Kay Wygal**, on behalf of<br>herself and all others similarly situated,<br>209 Uhler Avenue<br>Marion, Ohio 43302 | District Judge: |
| | Magistrate Judge: |
| **Edward Wygal**, on behalf of<br>himself and all others similarly situated,<br>209 Uhler Avenue<br>Marion, Ohio 43302 | |
| Plaintiffs, | **CLASS ACTION COMPLAINT**<br>Jury Demand Endorsed Hereon |
| v. | |
| **Equifax, Inc.**<br>c/o Statutory Agent:<br>Corporation Service System, Inc.<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio  43215 | |
| Defendant. | |

## INTRODUCTION AND NATURE OF ACTION

1.      Plaintiffs file this Class Action Complaint seeking legal remedies for Equifax's

failure to protect Ohio consumer's personal and credit information. As further alleged in

this Complaint, Equifax recklessly allowed unauthorized third parties repeated access to its

unsecured database from at least May through July 2017. Equifax also unreasonably

delayed notifying Ohio consumers about the security breach and invasion of their personal information. As a result, millions of Ohioans' privacy and personal credit information was compromised and/or misappropriated. Plaintiffs seek certification of an Ohio-only class for violations of both Ohio and Federal laws. In particular, Plaintiffs seek to establish a class of Ohio consumers, as further defined herein, who suffered harm as a result of Equifax's knowing failure to comply with Ohio's data security breach disclosure statute, R.C. 1349.19, and Ohio's Consumer Sales Practices Act, R.C. 1345.01, et. seq., among other laws.

**JURISDICTION, VENUE AND PARTIES**

2.      This is a class action brought under Fed. R. Civ. P. 23(a), (b)(3) and (c)(4), among other provisions, as well as S.D. Ohio Civ. R. 23.1-3, seeking monetary relief both individually and for the putative Class.


3.      This Court has jurisdiction over the parties and the subject matter of this action.


4.      Plaintiff Suzanne Meade is an individual Ohio consumer who resides at 2450 Warm Springs Drive, Hilliard, Ohio 43206.


5.      Plaintiff Brenda Kay Wygal is an individual Ohio consumer who resides at 209 Uhler Avenue, Marion, Ohio 23302.

6.    Plaintiff Edward Wygal is an individual Ohio consumer who resides at 209 Uhler Avenue, Marion, Ohio 23302.

7.    Equifax, Inc. ("Equifax") is a corporation organized under the laws of the state of Georgia maintaining its principal place of business in Atlanta, Georgia. Equifax's principal business is compiling information on individual consumers' credit obligations and consumers' performance thereof, and disseminating that information to creditors, employers, and insurers who request it for the purposes of evaluating a particular consumer's eligibility for credit, employment, or insurance.

8.    Equifax regularly does business in Ohio by, among other acts, providing Ohio consumers' credit reports to resellers as defined by the FCRA and discussed further herein.

9.    Equifax charges fees for the information it disseminates on consumers' credit obligations.

10.    At all times relevant, unless otherwise indicated, "Defendant" or "Equifax" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant Equifax.

3

11.     This Court has jurisdiction over the parties and the subject matter of this litigation.  In particular, this Court has diversity jurisdiction under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005. This Court also maintains subject matter jurisdiction pursuant to the Fair Credit Reporting Act (FCRA), as further alleged herein.

12.     Defendant Equifax regularly engages in business in, and direct business at, Ohio, and has otherwise availed itself of the Ohio marketplace, and secured the benefits of that marketplace.  Equifax's conduct includes, among other things, buying and selling consumer reporting information of Ohio residents, as well as holding itself out to Ohioans as a credit agency whose services and security Ohioans can rely upon. As such, Defendant is subject to this Court's personal jurisdiction.

13.     This Court has venue to hear this case pursuant to 28 U.S.C. §1391, among other reasons, because some of the transactions complained of, and out of which this action arose, occurred in the Southern District of Ohio, Eastern Division, where Plaintiffs reside.

**FACTS RELEVANT TO ALL CLAIMS**

14.     Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs.

15.    In March 2017, Equifax became aware that its website was vulnerable to unauthorized third-party access, including a portal that allowed Ohio consumers to log on to address issues with credit reports.

16.    On or about May 13, 2017, unauthorized third parties accessed Equifax's database and acquired Ohio consumer's personal identification and credit information.

17.    The personal identification and credit information includes Social Security numbers, birthdates, home addresses, driver's license numbers, credit card numbers, credit scores and ratings, and the like.

18.    On or about May 13, 2017, Equifax knew or should have known about the unauthorized third-party access and misappropriation of Ohio consumer's personal identification and credit information.

19.    From May 13, 2017 through at least August 2, 2017, third parties continued to access and steal, Ohio consumer's personal identification and credit information from Equifax's unsecured database.

20.    From May 13, 2017 through at least August 2, 2017, Equifax knew or should have known about the ongoing unauthorized third-party access and theft of Ohio consumer's personal identification and credit information.

21.    Despite its actual or imputed knowledge of the repeated unauthorized third-party access and theft of Ohio consumers' personal identification credit information, Equifax neither stopped the unauthorized access nor notified Ohioans that their personal credit information had been accessed and/or misappropriated.

22.    Equifax did not notify Ohioans of the security data breach until September 7, 2017, more than 100 days after the Equifax website was first breached.

23.    Following Equifax's discovery of the data breach but prior to public disclosure, three high-level Equifax executives—the Chief Financial Officer, the Workforce Solutions President, and the U.S. Information Solutions President—sold approximately $1.8 million in company shares on or about August 1 to August 2, 2017.

24.    From March through July 2017, Equifax possessed or had access to the appropriate security updates and software patches to prevent further breaches and misappropriation, but chose not to update or patch its website, among other reasonable preventative measures.

25.    On or about September 15, 2017, Equifax's Chief Information Officer and Chief Security Officer both resigned.

6

26.    On or about September 18, 2017, federal prosecutors and the FBI opened a criminal investigation into the massive data breach, including but not limited to, whether Equifax's top executives violated insider trading laws.

27.    On or about September 21, 2017, Equifax admitted that it sent victims of the massive data breach to a bogus website that shared a similar address to the one it set up to help victims and/or a phishing site on its social media outlets, rendering already affected Ohioans increasingly more vulnerable to scammers and further identity and information theft.

28.    On September 26, 2017, Equifax's Chief Executive Officer resigned. In testimony before Congress, the former Chief Executive Officer, Richard F. Smith, admitted that Equifax failed to secure and remedy a known cyber security threat to its database. https://energycommerce.house.gov/hearings/oversight-equifax-data-breach-answers-consumers/.

29.    To date, Equifax is subject to multiple federal and/or state government inquiries, including but not limited to Congressional hearings, and investigations by the Federal Trade Commission, the Consumer Financial Protection Bureau, numerous state attorneys general, among others.

30.    Initially, the Equifax breach was estimated to have affected 143 million American consumers, of which approximately 5 million are Ohioans.

31.    On or about October 2, 2017, Equifax announced that its cybersecurity firm, Mandiant, completed its forensic investigation and determined that the breach in fact affected 2.5 million more people than Equifax had originally announced. To date, this brings the total affected victims to 145.5 million Americans, including additional Ohioans.

32.    The harm suffered by Plaintiffs and the Class is severe and ongoing and includes, but is not limited to, theft of their personal and financial information, unauthorized charges on their debit and credit card accounts, credit harm, untimely and inadequate notification of the security breach, improper disclosure of their personally identifiable information (PII), privacy violations, stress, expenditure of time, incurring out-of-pocket expenses to remedy or mitigate the security breach's harmful effects, risk of fraudulent income tax returns, risk of stolen benefits from private health insurance, among other losses.

33.    Plaintiff Suzanne Meade's personal identification and credit information had been collected and stored by Equifax, and was accessed and acquired by unauthorized third parties during the May through July 2017 security breach. As a result, Plaintiff Suzanne Meade was forced to incur expenses for third-party credit monitoring services, among other damages and/or losses asserted above and herein.

8

34.     Plaintiff Brenda Kay Wygal's personal identification and credit information had been collected and stored by Equifax, and was accessed and acquired by unauthorized third parties during the May through July 2017 security breach. As a result, Plaintiff Brenda Kay Wygal was forced to incur expenses for third-party credit monitoring services, among other damages and/or losses asserted above and herein.

35.     Plaintiff Edward Wygal's personal identification and credit information had been collected and stored by Equifax, and was accessed and acquired by unauthorized third parties during the May through July 2017 security breach. As a result, Plaintiff Edward Wygal was forced to incur expenses for third-party credit monitoring services, among other damages and/or losses asserted above and herein.

**<u>CLASS ALLEGATIONS</u>**

36.     Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs.

37.     Plaintiffs bring this action, individually and on behalf of all similarly situated individuals, as members of the following class:

> **Ohio citizens whose personal identification and credit information was compromised during the Equifax website security breach from May through July 2017.**

38. The Plaintiffs are members of this class. Specifically excluded from the class are the following: (1) Plaintiffs' counsel; (2) Defendant and any entity in which either has a controlling interest, and the officers, directors, employees, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity; and (3) any judge or judicial officer with responsibility over the management or resolution of this litigation and members of any such individual's immediate family.

39. **Numerosity (Fed. R. Civ. P. 23(a)(1)).** The members of the class are so numerous that joinder is impracticable. Upon information and belief, and Defendant Equifax's own public statements, many thousands, if not millions, of Ohio consumers' identification and credit information has been compromised as a result of the website security breach.

40. **Commonality (Fed. R. Civ. P. 23(a)(2) and (b)(3)).** Common questions of law and fact predominate over any questions solely affecting individual class members. Among such common questions of law and fact are the following:

   A. Whether Equifax was negligent *per se* in failing to timely notify Ohio consumers of the data security breach, as required by RC 1349.19;

   B. Whether Equifax was negligent and/or reckless under Ohio common law in failing to satisfy its duty to protect Ohio consumers' personal identification and credit information from unauthorized third-party access and/or use;

   C. Whether Equifax knowingly, negligently and/or recklessly violated the Fair Credit Reporting Act by allowing unauthorized third-party access and use of Ohio consumers' personal and credit information; and

10

D.   Whether Equifax breached an implied contract with Ohio consumers to safeguard their personal identification and credit information from third parties.

E.   Whether Equifax knowingly violated the Ohio Consumer Sales Practices Act by committing unfair, deceptive and/or unconscionable acts or practices, including violations of Ohio statutory and administrative law.

41.   **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiffs' individual claims are typical of their respective class members' claims because the claims all share the same legal basis for recovery, the same predicate facts to liability, and the same basic relief sought.  The class and individual representative claims are thus substantially the same or identical to one another.

42.   **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiffs will fairly and adequately protect the interests of the class members.  Plaintiffs have no interest antagonistic to those of other class members, and Plaintiffs have retained attorneys experienced as counsel in class actions, consumer protection, and complex litigation.  In fact, the undersigned counsel have previously engaged in years of similar consumer and class-action litigation against Equifax, who is familiar with putative Class Counsel's experience, abilities, knowledge and reputation in this field.

43.   **Superiority (Fed. R. Civ. P. 23(b)(3).** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy for at least the following

11

reasons:

A.  Given the small size of individual class members' claims (for example, between $100-$1,000 in Fair Credit Reporting Act statutory damages) and the expense of litigating those claims (the cost of filing individual suit would likely exceed $200), few, if any, class members could afford to, or would seek, legal redress individually for the wrongs that Equifax has committed against them, and absent class members have no substantial interest in controlling the prosecution of individual actions. No such individual actions in Ohio are pending as of the date of filing this complaint.

B.  When the liability of Equifax has been adjudicated, claims of all class members can be administered efficiently and/or determined by the Court. Indeed, Equifax's own database contains the identifying information to notify and compensate class members.

C.  The class action will promote an orderly and expeditious administration and adjudication of this dispute. This class action will foster economies of time, effort, and resources. This class action will ensure uniformity of decisions.  It is therefore desirable to concentrate the claims as a class action in this forum.

D.  Without this class action, the class members will continue to suffer harm, and Equifax's unlawful conduct will be unaccounted for.

44.   No difficulty will be encountered in managing this litigation that would preclude its maintenance as a class action.  Indeed, those harmed by Equifax can be readily identified through the company's own business records, including the very personal identifying information at issue, such as home mailing addresses and other identification.

45.   The prosecution of separate actions by or against individual members of the class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the class, which could establish incompatible standards of conduct for the party opposing the class; and/or (ii) adjudications with respect to individual members of the class

12

that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

46.    Notice can be provided to members of the Class by regular U.S. Mail, among other means that satisfy due process and practical concerns.

47.    The maintenance of the sub-classes may be appropriate under Fed. R. Civ. P. 23(C)(4).

**FIRST CLAIM – NEGLIGENGE PER SE**
**UNDER R.C. 1349.19**

48.    Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs.

49.    R.C. 1349.19 protects Ohio consumers by requiring companies such as Equifax to disclose or notify consumers when unauthorized access to and acquisition of computerized data that compromises the security or confidentiality of their personal information, and said security breach causes, reasonably is believed to have caused, or is reasonably believed will cause, a material risk of identity theft or other fraud to Ohio consumers or their property.

13

50.    R.C. 1349.19 creates a legal duty and public policy for Equifax to safeguard computerized personal information data from identity theft and other fraud, in addition to promptly disclosing and notifying victims in the event of a breach and/or when the security and confidentiality of their information is compromised.

51.    Equifax owes a duty to Plaintiffs under R.C. 1349.19 to notify and disclose the security breach to Ohio consumers "in the most expedient time possible, but not later than forty-five days following its discovery or notification of the breach in the security of the system . . . ." R.C. 1349.19(B)(2).

52.    Equifax breached its duty by negligently and/or recklessly failing to disclose or notify Ohio consumers of the security breach within the timeframe required by the statute. Equifax is therefore negligent per se under Ohio law.

53.    Equifax breached its duty by negligently and/or recklessly failing to disclose or notify Ohio consumers of the security breach by the mean(s) and method(s) of disclosure or notification required by the statute. R.C. 1349.19(D). Equifax is therefore negligent per se under Ohio law.

54.    Due to Equifax's wrongful and negligent and/or reckless breach of its notification and disclosure duties owed to Plaintiffs, Plaintiffs were not made aware that their personal identification and credit information was compromised and as such, were

14

prevented from taking any steps available to prevent further harm to themselves.

55.    Equifax owed a duty to Plaintiffs to "take any measures necessary to determine the scope of the breach, including which residents' personal information was accessed and acquired, and to restore the reasonable integrity of the data system." R.C. 1349.19(B)(2).

56.    Once Equifax knew should have known of the security breach, time was of the essence, and yet Equifax's unreasonable delay in determining the scope of the breach and restoring the reasonable integrity of the system, invited and enabled ongoing access and theft by unauthorized third parties.

57.    Due to Equifax's wrongful and negligent and/or reckless breach of its duty, Plaintiffs personal identification and credit information was compromised, as it was accessed and misappropriated by unauthorized third parties, directly and proximately causing foreseeable risk of data loss, credit harm, identity theft, and other economic losses.

**SECOND CLAIM – NEGLIGENCE AND RECKLESSNESS**

58.    Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs.

59.    Equifax owes Plaintiffs a duty to exercise reasonable care in obtaining,

15

collecting, retaining, storing, securing, safeguarding, and protecting Ohio consumers'

personal identification and credit information from being compromised, lost, stolen,

accessed, acquired and/or misused by unauthorized third-party users.

60.     This duty includes, but is not limited to: (1) designing, creating, maintaining,

and testing Equifax security systems; (2) developing and implementing technological and

administrative processes to timely detect any potential security breaches of its computer

systems and networks which contain personal identification and credit information; (3)

establishing and following effective procedures to promptly address any potential breaches

including but not limited to, investigation and analysis to determine the scope and severity

of said breaches, disclosure and notification to affected victims; introducing measures to

correct and remedy the existing damages, as well as to prevent future security breaches;

(4) complying with industry standards and requirements; and (5) adequately training and

supervising Equifax personnel in all of the aforementioned matters.

61.     Equifax, one of the three major consumer credit reporting agencies which

collects and aggregates information on over 800 million consumers, knew the inherent risks

in obtaining, collecting, retaining, and storing Ohio consumers' personal identification and

credit information.

62.     Equifax also knew the necessity of adequately securing, safeguarding, and

16

protecting Ohio consumers' personal identification and credit information in its computer systems and networks yet, despite having financial, technological and administrative resources, Equifax neglected to do so.

63. Equifax was at all times fully aware of its obligations under both state and federal law and the relevant standards and regulations designed to protect private and confidential information which Ohio consumers had entrusted to Equifax.

64. Equifax owed such duties of care to Plaintiffs because they were foreseeable and probable victims of inadequate security systems and procedures, which predictably invited and enabled unauthorized third-party access to Ohio consumers' personal identification and credit information.

65. Equifax's own internal security policy required the company to remedy the known security and software threat within 48 hours, but Equifax negligently and/or recklessly failed to do so, among other breaches of its duties to Ohioans.

66. Equifax negligently and/or recklessly breached its legal duty by failing to establish and maintain effective technological safeguards and procedures to protect personal identification and credit information within its computer systems and networks. Equifax likewise fell below the standard of care in the relevant industries, including the

technology, security, and/or consumer credit reporting industries.

67.    Equifax also negligently and/or recklessly breached its legal duty by failing to timely and adequately disclose and notify Ohio consumers of the security breach.

68.    Due to Equifax's negligent and/or reckless breach of its duty owed to Plaintiffs, Plaintiffs' computerized personal identification and credit information was compromised as it was accessed and acquired by unauthorized third-party users, directly and proximately causing foreseeable risk of data loss and credit harm, among other losses as asserted herein.

**THIRD CLAIM – BREACH OF IMPLIED CONTRACT**

69.    Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs.

70.    Plaintiffs entered into implied contracts with Equifax when Plaintiffs entrusted their sensitive and confidential information to Equifax by providing their personal identification and credit information for Equifax to collect, maintain, and provide their credit information.

71.    In exchange, Equifax agreed to safeguard and protect Plaintiffs' personal

identification and credit information; to timely and adequately notify Plaintiffs in the event that their information was breached and/or otherwise compromised; and to provide their credit information only for legal and/or otherwise permissible purposes.

72. Equifax offered their credit monitoring services to Plaintiffs and solicited and invited Plaintiffs to provide their personal identification and credit information. Plaintiffs accepted Equifax's offer and utilized its credit monitoring services within the time the security breach occurred.

73. Plaintiffs would not have provided and entrusted their information to Equifax in absence of the implied contracts between them.

74. Plaintiffs fully performed their obligations under the implied contracts with Equifax.

75. The losses and damages sustained by Plaintiffs as described herein were the direct and proximate result of Equifax's breaches of the implied contracts between Equifax and Plaintiffs.

**FOURTH CLAIM – WILLFUL AND RECKLESS AND/OR NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

76. Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs.

77. Equifax negligently, knowingly and/or recklessly violated the Fair Credit Reporting Act (FCRA) by allowing unauthorized third-party access and use of Ohio consumers' credit information.

78. As individuals, Plaintiffs are "consumers" entitled to the protections of the FCRA. 15 U.S.C. § 1681(a)(c).

79. A "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties ..." 15 U.S.C. § 1681(a)(f).

80. Equifax is a "consumer reporting agency" as defined by and regulated by the FCRA, as it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties for monetary fees.

20

81.     Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for – (A) credit … to be used primarily for personal, family, or household purposes; … or (C) any other purpose authorized under section 1681(b) of this title." 15 U.S.C. § 1681a(d)(1).

82.     Plaintiffs' compromised personal identification and credit information constituted a "consumer report" as defined by the FCRA because it was a communication of information bearing on Plaintiffs' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which was used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Plaintiffs' eligibility for credit.

83.     As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances as set forth in 15 U.S.C. § 1681(b) and "no other." 15 U.S.C. § 1681(b)(a).

84.     As a consumer reporting agency, Equifax is required to "maintain reasonable

21

procedures designed to --- limit the furnishing of consumer reports to the purposes listed under section 1681 of this title." 15 U.S.C. § 1681(e)(a).

85.    Equifax is required to establish and comply with reasonable procedures designed to ensure that the consumer reports are only re-sold for a permissible purpose. 15 U.S.C. § 1681(e)(e). Equifax may not sell or resell consumer reports if it has reason(s) to believe the information will not be used for one of the statutorily-defined permissible purposes, as specifically defined in section 603(d) of the FCRA.

86.    Equifax is also required to obtain the end-user identification and certification of permissible purpose at the time Equifax resells consumer reports to end-users.

87.    Equifax willfully and recklessly disregarded its duties under 15 U.S.C. § 1681e(a) to prevent acquisition and misuse of Plaintiff's personal identification and credit information.

88.    In the alternative, Equifax negligently failed to establish and maintain reasonable procedures designed to limit the furnishing of consumer reports to the statutorily permissible purposes under section 1681(b) of the FCRA.

89.    Equifax's negligent conduct invited and enabled unauthorized third party(ies) to access and acquire Plaintiffs' consumer reports outside the statutorily-defined

22

permissible purposes under the FCRA.

90.    Equifax willfully and recklessly failed to obtain the identities and certifications of permissible purpose from end-users of Plaintiffs' consumer reports in violation of 15 U.S.C. § 1681(g).

91.    In the alternative, Equifax negligently failed to make reasonable efforts to investigate and verify the identities of the end-user(s) and proffered permissible purpose(s), among other negligence.

92.    Due to Equifax's aforementioned willful and reckless and/or negligent misconduct, Plaintiffs' personal identification and credit information was compromised and subject to further access and acquisition by unauthorized third parties, directly and proximately causing foreseeable risk of data loss, credit harm, identity theft, and other losses and actual harm.

93.    In the alternative, due to Equifax's negligent breach of its duty under the FCRA, Plaintiffs' personal identification and credit information was compromised as it was accessed and acquired by unauthorized third-party users, directly and proximately causing foreseeable risk of data loss, credit harm, identity theft, and other losses and actual harm.

94.    Due to Equifax's willful and reckless violation of the FCRA, Plaintiffs are entitled

to recover "any actual damages sustained by the consumer … or damages of not less than $100 and not more than $1,000" under 15 U.S.C. § 1681(n)(a)(1)(A), in addition to statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681(n).

95.    In the alternative, due to Equifax's negligent failure to comply with the FCRA, Plaintiffs are entitled to recover "any actual damages sustained by the consumer" under 15 U.S.C. § 1681(o)(a)(1), in addition to their cost of the action as well as reasonable attorneys' fees. 15 U.S.C. § 1681(o)(a)(2).

### FIFTH CLAIM – KNOWING VIOLATIONS OF OHIO CONSUMER SALES PRACTICE ACT

96.    Plaintiffs repeat, re-allege, and incorporate by reference all of the foregoing paragraphs.

97.    Defendant Equifax is a "supplier" under the Ohio Consumer Sales Practices Act.

98.    Plaintiffs and the Class are "consumers" under the Ohio Consumer Sales Practices Act.

99.    Defendant Equifax's transactions, acts and/or practices, as described in this Complaint, constitute "consumer transactions" under the Ohio Consumer Sales Practices Act.

100. Defendant Equifax's acts and practices, as described in this Complaint, constitute unfair, deceptive, and/or unconscionable acts and practices, as those terms are

24

understood and defined by the Ohio Consumer Sales Practices Act and Ohio law. R.C. 1345.02-03.

101.  More specifically, Equifax knowingly violated both Ohio consumer protection laws, including but not limited to R.C. 1349.19 and 1345.02-03, as well as Federal consumer protection laws, including the FCRA. See First and Fourth Claims, above.

102.  In like manner, Equifax knowingly committed acts and practices previously declared to be deceptive and/or unconscionable by rules adopted under R.C. 1345.05 and/or declared to be such by a court of the State of Ohio, among other bases under R.C. 1345.09.

103.  Included among those rules that Equifax violated is Ohio Administrative Code 109:4-3-10, which requires Equifax to make truthful representations, claims, and assertions to consumers, among other requirements.

104.  As a direct and proximate result of Equifax's knowing violations of Ohio's Consumer Sales Practice Act, Plaintiffs and the Class have suffered actual economic damages, including the cost of credit monitoring and/or repair, among other damages, as asserted herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs and the Class respectfully request that this Court:

A.      GRANT compensatory damages for the harms and/or losses asserted;

B.      GRANT statutory damages as provided by the FCRA;

C.      AWARD costs and reasonable attorney's fees pursuant to the FCRA, Ohio

   Consumer Sales Practices Act, and/or other laws; and

D.      GRANT such other and further relief as the Court may deem just and proper.


Respectfully submitted,

**Kitrick, Lewis, & Harris, Co. LPA**

/s/ Mark D. Lewis
Mark D. Lewis (0063700)
445 Hutchinson Avenue, Suite 100
Community Corporate Center
Columbus, OH 43235-8630
Phone: (614) 224-7711
Fax: (614) 225-8985
mlewis@klhlaw.com
Attorney for Plaintiffs

**Robert J. Wagoner, Co., L.L.C.**

/ s / Robert J. Wagoner
Robert J. Wagoner (0068991)
Of Counsel to Kitrick, Lewis & Harris Co.,
L.P.A.
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43235
Phone (614) 796-4110
Fax (614) 796-4111
Bob@wagonerlawoffice.com
Attorney for Plaintiffs

**Luftman, Heck & Associates, LLP**

/s/ Jeremiah E.  Heck
Jeremiah E.  Heck (0076742)
580 East Rich Street
Columbus, Ohio  43215

Phone: (614) 224-1500
Fax: (614) 224-2894
jheck@lawLH.com
Attorney for Plaintiffs

**The Law Office of Brian M.  Garvine, LLC**

/s/ Brian M.  Garvine per email consent
Brian M.  Garvine (0068422)
5 East Long Street, Suite 1100
Columbus, OH 43215
Phone (614) 223-0290
Fax  (614) 221-3201
brian@garvinelaw.com
Attorney for Plaintiffs

**Michelle E. Lanham, Attorney at Law, LLC**

/ s / Michelle E. Lanham
Michelle E. Lanham (0091944)
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43235
Phone (614) 300-5896
Fax (614) 737-5239
Michelle@mlanhamlaw.com
Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand trial by jury in this action.

/s/ Mark Lewis
Mark Lewis (0063700)

27